IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JAMES BROADNAX | § | |
| VS. | § | CIVIL ACTION NO. 9:25-CV-40 |
| MELISSA ELLIOTT, *et al.*, | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, James Broadnax ("Broadnax"), proceeding with counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 against numerous defendants.  The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Background

By way of his Amended Complaint filed November 25, 2024, Broadnax sued twelve defendants for violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 (doc. #35).  These defendants are Nurse Lizette Fernandez ("Fernandez"), Physician Assistant Paul Reilley ("Reilley"), Dr. Owen J. Murray ("Murray), Senior Vice President for the University of Texas Medical Branch ("UTMB") Correctional Managed Care ("CMC"), the Texas Department of Criminal Justice ("TDCJ") Executive Director Bryan Collier ("Collier"), the TDCJ Correctional Institutions Division ("CID") Director Bobby Lumpkin ("Lumpkin"), Dr. Lannette Linthicum ("Linthicum"), Director of Health Services by TDCJ, Officer Christy Waller ("Waller"), Sergeant Joni Shaeffer ("Schaeffer"), Lieutenant Samantha Horn ("Horn"), Sergeant Jamar Bey ("Bey"),

Officer Suzanne Fults ("Fults"), and Officer Albert Perkins ("Perkins") (collectively "Defendants"). At all times relevant to his claims, Broadnax was assigned to the Polunsky Unit in West Livingston, Texas. Broadnax sues Defendants in their individual capacity and seeks compensatory damages, punitive damages, attorneys' fees, costs, and a declaration that Defendants were deliberately indifferent to Broadnax's serious medical needs in violation of his Eighth and Fourteenth Amendment rights. Broadnax summarizes his claims as follows:

> On September 13, 2023, [Broadnax] began to suffer intense, sudden chest pain above his sternum, which instantly spread to the right side of his chest. [Broadnax] was visibly short of breath, wheezing, and gasping. [Broadnax] became unable to stand, and was forced to remain doubled over in his cell. He noticed his hands were quickly losing color and that he was becoming extremely pale.
>
> [Broadnax] immediately alerted [] Waller and [] Fernandez to his condition, and over the next seven days, repeatedly made oral and written requests through prison officials and the prison's written procedures for medical treatment. Although they were aware of [Broadnax]'s urgent medical needs, officials at the Polunsky Unit ignored [Broadnax]'s requests and left him to suffer in severe pain for a week. After finally receiving a medical exam on September 20, 2023, he was rushed to the hospital and diagnosed with a collapsed lung, which required surgical intervention and a week-long hospital stay.
>
> After returning to the Polunsky Unit from the hospital, medical staff removed his surgical sutures too early—over [Broadnax]'s objections and without an examination. [Broadnax] suffered for several weeks with an open wound and additional pain.

Amended Complaint (doc. #35 at 1-2).

Now pending are four motions to dismiss filed by Bey, Fults, Horn, and Schaeffer (doc. #46), Murray, Reilley and Fernandez (doc. #48), Collier, Lumpkin and Linthicum (doc. #56) and Waller and Perkins (doc. #87).[1] Broadnax filed a consolidated response in opposition to the motions to dismiss filed by Defendants Fernandez, Horn, Schaeffer, Bey, Reilley, and Fults (doc. #72), a

---

[1] Waller and Perkins originally defaulted (doc. #70). This court recommended granting Waller and Perkins' Motion to Set Aside the Clerk's Entry of Default on November 5, 2025 (doc. #105).

consolidated response in opposition to the motion to dismiss filed by Murray, Collier, Lumpkin and Linthicum (doc. # 73),[2] and a response to the motion to dismiss filed by Waller and Perkins (doc. #94). Bey, Fults, Horn and Shaeffer filed a reply on January 28, 2025 (doc. #75), while Collier, Lumpkin and Linthicum filed a reply separately but on the same day (doc. #76). Waller and Perkins filed a reply on August 12, 2025 (doc. #95).[3] Defendants assert that Broadnax lacks standing for declaratory relief, that he has failed to state a claim for deliberate indifference, and that they are entitled to qualified immunity.[4] The motions to dismiss are now ripe for review.

<u>Standard of Review</u>

A.    <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of Plaintiff's complaint. FED. R. CIV. P. 12(b)(1). The Rule allows a party to challenge the subject-matter jurisdiction of a district court based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting the

---

[2] This was by agreement of the parties and order of the court in the Southern District. The court admonishes the parties from any such further agreement in this case. The lack of streamlined responses, replies and sur-replies has made it more than challenging for this court to construe and analyze the arguments put forth by the parties in an organized and constructive fashion, and has delayed the undersigned's decision.

[3] It does not appear that a reply was filed by Murray, Reilley, and Fernandez.

[4] To the extent Broadnax brought claims against Defendants in their official capacities, Defendants moved to dismiss them as barred by Eleventh Amendment sovereign immunity. As previously stated, Broadnax only asserts claims against Defendants in their individual capacities.

existence of jurisdiction bears the burden of proof once a court's subject-matter jurisdiction is challenged. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

B.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate when the plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must state enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570).

Although generally the court may not look beyond the pleadings, the court may examine not only the complaint, but documents attached to the complaint and documents attached to the motion to dismiss to which the complaint refers and which are central to Plaintiffs' claim(s), as well as matters of public record. *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) (citing *Collins v. Morgan Stanely Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n. 6 (5th Cir. 1994)).

In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

However, conclusory allegations and formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Twombly*, 550 U.S. at 555.

### C.    Deliberate Indifference

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id*. at 104-05. A prison official acts with deliberate indifference if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id*.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)

(internal quotation marks and citation omitted).  Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm.  *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Mendoza v. Lynagh*, 989 F.2d 191,195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

### D.    Qualified Immunity

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).  "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)).

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011).  The Fifth Circuit Court of Appeals has emphasized that a government official is entitled to qualified immunity unless all reasonable officials

6

would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000). Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). To that end, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Shaw v. Villanueva*, 918 F.3d 414, 416-17 (5th Cir. 2019) (quoting *Whitley v. Hannah*, 726 F.3d 631, 638 (5th Cir. 2013)). Courts have discretion to determine which of these prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If the court finds that the plaintiff has alleged the violation of a constitutional right—a clearly established constitutional right—the court must then determine if the defendant official's action could reasonably have been thought consistent with that right. *Pearson*, 555 U.S. at 244-45. In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Id.* Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

<u>Discussion</u>

For purposes of this Report and Recommendation, the undersigned will group the discussion surrounding Defendants by their roles as TDCJ and/or UTMB supervisors, UTMB medical

professionals at the Polunksy Unit, and TDCJ officials at the Polunsky Unit.  As previously outlined, Broadnax only asserts claims against Defendants in their individual capacities.  A discussion of those claims follow.

    A.   <u>Declaratory Relief</u>

Broadnax requests a "declaration that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of Plaintiff's Eighth and Fourteenth Amendment Rights."  For reasons that are less than clear on the current record, only Murray, Fernandez and Reilley argue that Broadnax lacks standing to request declaratory relief.  Specifically, Murray, Fernandez and Reilley argue that Broadnax fails to show redressability and injury in fact.

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).  Plaintiffs seeking declaratory relief can satisfy the redressability requirement only be demonstrating a "continuing or threatened future injury." *Id.*; *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("future injury"); *see Serafine v. Crump*, 800 F. App'x 234, 236 (5th Cir. 2020) (per curiam) (observing that, although Lyons addressed injunctive relief, its "reasoning applies equally to declaratory relief").  To meet the injury in fact requirement, "[t]he threat of future injury must be 'certainly impending'; mere '[a]llegations of possible future injury' do not suffice." *Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022) (per curiam) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Here, Broadnax only has standing if he has pleaded facts showing a continuing harm or immediate threat of repeated harm. *Herman*, 959 F.2d at 1285.  Broadnax pleads that Murray,

Fernandez and Reilley "acted and relied on the unconstitutional *de facto* policies of UTMB, TDCJ and Polunksy Unit throughout their denial of medical care, delay of appropriate medical evaluation, and delay of emergency medical treatment for Plaintiff." Amended Complaint (doc. #35 at ¶ 130). Broadnax is still incarcerated at the Polusnky Unit. Thus, he remains "presently and prospectively" subject to the actions or inactions of Defendants which he alleges enabled his injury. *Dunn McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 964 F. Supp. 1125, 1130 (S.D. Tex. 1995) *aff'd* 112 F.3d 1283 (5th Cir. 1997). Thus, Broadnax has standing to seek declaratory relief and the motion to dismiss Broadnax's claims for declaratory relief for lack of subject matter jurisdiction should be denied.

### B.    Supervisory Defendants

Broadnax sues Collier, Lumpkin, and Linthicum in their role as TDCJ supervisors and Murray in his role as a UTMB supervisor. At the time of filing the amended complaint, Collier was the TDCJ Executive Director,[5] Lumpkin was the TDCJ-CID Director,[6] and Linthicum was the TDCJ Director of Health Services; Murray served as the Senior Vice President for UTMB CMC, the healthcare entity that oversees and provides healthcare to TDCJ inmates.[7] These defendants will be collectively referred to as "Supervisory Defendants."

Section 1983 does not attach liability to supervisory officials for the misdeeds of their subordinates under a theory of vicarious liability or respondeat superior. *Estate of Davis ex rel.*

---

[5] Collier retired effective August 31, 2025.

[6] Upon Collier's retirement, Lumpkin was named the Executive Director. Eric Guerrero now serves as the TDCJ-CID Director.

[7] Both Linthicum and Murray still serve in their respective roles.

*McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir.2005). Instead, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir.2011) (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs*., 537 F.3d 404, 435 (5th Cir.2008)). Supervisory liability without overt personal participation in the offensive act thus can liken only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation." *Thompkins v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (internal quotations omitted). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as a policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2011)).

### i. The Contract

Broadnax alleges the Supervisory Defendants were deliberately indifferent to his serious medical needs when they devised, authorized, condoned or implemented contractual obligations that (1) encourage UTMB and TDCJ to resolve substantial and legitimate incarcerated grievances in favor of their employees or prison officials rather than incarcerated persons, otherwise UTMB and TDCJ would endure penalties or other hardships and (2) allow for UTMB's employees to deliberately ignore or dismiss one out of every five sick call slips without a penalty to employees or

recourse for the incarcerated person.[8]  Broadnax states that the Supervisory Defendants were aware that the terms of the Contract and the policies adopted as a result would result in improper denials of medical care in violation of incarcerated individuals' constitutional rights.  "Instead of rectifying the situation, they ratified the very policies and practices that unconstitutionally deny and delay medical care for incarcerated people."  As a result, Broadnax alleges that Fernandez and Reilley "ignored or dismissed" Broadnax's "four sick-call slips without any issue or penalty, which in turn caused Broadnax to suffer in debilitating pain for seven days without any medical care for his life-threatening condition."

With respect to Murray's role, documents incorporated in the Amended Complaint demonstrate that he chairs the System Leadership Council, which works "to develop policies and procedures, review specific evaluation and/or monitoring data and amend practices to increase the effectiveness and efficiency of" healthcare quality.  Exhibit N at 30.  The Contract states that "[a]ccess to care measures are calculated monthly and reported on a quarterly basis through the System Leadership Council in accordance with the Quality Improvement Plan adopted by the CMHCC."  *Id*.; Exhibit O at 63.  As to Collier, Broadnax alleges and establishes that he signed the Contract and that he is "responsible for monitoring the performance of UTMB in its provision of healthcare to [prisoners]."  Exhibit N at 30-31.  As Director of TDCJ-CID, Lumpkin "determine[d] the rules, regulations, and policies regarding management, personnel, and operation of TDCJ CID,

---

[8] The contract between TDCJ and UTMB for medical services is attached to the Amended Complaint as Exhibit N.  According to Broadnax, the Contract subjects UTMB to "performance expectations," including an obligation to ensure that "the percentage of sustained Inmate grievances is 10% or less for Step One and 6% or less for Step Two."  In addition, Broadnax alleges that the Contract obligates UTMB to respond to incarcerated person's sick call slips only 80% of the time, and that UTMB's employees can, therefore, ignore 20% of sick call slips without penalty, additional monitoring, or corrective action.

including policies regarding medical care for [prisoners]." Linthicum, as Director of TDCJ Health Services and a member of the CMHCC, "is responsible for monitoring the performance of UTMB in its provision of healthcare to [prisoners]." She also authored a report on complaint statistics. Exhibit O at 87-94.

### ii. *De Facto* Policy

In addition, Broadnax contends that the Supervisory Defendants knowingly adopted a *de facto* policy of denying or delaying medical treatment and disregarding the serious medical needs of incarcerated individuals in their custody. Broadnax supports this claim with publicly available information from the Correctional Managed Health Care Committee ("CMHCC"),[9] incidents documented in a 2011 report by the Texas Civil Rights Project,[10] and more recent cases litigated in federal court that show what he alleges are similar incidents of deliberate indifference as compared to his own.[11] All of this information, according to Broadnax, demonstrate the UTMB and TDCJ's

---

[9] According to Broadnax, there have been 119,372 combined Level II medical grievances and Patient Liaison Program ("PLP") complaints received from 2017 to 2023. A PLP complaint arises when a third party requests an investigation regarding an inmate's access to health care and/or quality of care. Only 6,277 of these complaints were sustained and led to an Action Request. From 2017 to 2023, Step II grievances, according to Broadnax, were sustained at approximately a rate of 4.75% – even less than the 6% required under the contract. Broadnax alleges, "[u]pon information and belief, these figures are the result of UTMB and TDCJ dismissing legitimate grievances from incarcerated persons under their care." The CMHCC Report is attached as Exhibit O.

[10] Broadnax describes an incident where an inmate spent over six months without a hip joint after his hip replacement was removed; an inmate going blind for nearly a month before he was seen by any medical professional, and once seen, was given psychotropic drugs, which left him permanently blind; a 34 year old incarcerated male died after medical staff waited over two hours to enter a shower where he collapsed and autopsy revealed he was "boiled alive" due to a two-hour long exposure to water temperatures more than 150 degrees; and an inmate's foot was amputated above the ankle after UTMB staff only cleaned a staph infected wound twice weekly rather than twice daily per doctors orders. The Texas Civil Rights Project report is attached as Exhibit P.

[11] In a 2019 incident, an inmate developed a disease and cauliflower-like growth on his tongue after a UTMB doctor refused to physically examine him and prescribed him a minor dose of Ibuprofen after he bit off his tongue during a basketball game and in 2022, an inmate brought suit when numerous

custom or practice to deny medical treatment, delay medical treatment, or to ignore medical needs and emergencies of incarcerated persons under its care. Broadnax specifically alleges that the Supervisory Defendants were aware that UTMB and TDCJ staff routinely and unconstitutionally deny and delay medical care to prisoners and authorized or condoned that policy. Broadnax states that Fernandez, Waller, Horn, Schaeffer, Bey, Reilley, Fults, and Perkins acted and relied on the unconstitutional *de facto* policies of UTMB, TDCJ, and the Polunsky Unit throughout their denial of medical care, delay of appropriate medical evaluation, and delay of emergency medical treatment to Broadnax.

The Eighth Amendment dictates that cruel an unusual punishment shall not be inflicted, and is applicable to the states by reason of the Due Process Clause of the Fourteenth Amendment. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). Two requirements must be met for an Eighth Amendment claim challenging conditions of confinement. *See Farmer,* 511 U.S. at 834. First, "the prison official's act or omission must be objectively serious, in that it 'result[s] in the denial of the minimal civilized measure of life's necessities." *Blackmon v. Garza*, 484 F. App'x 866, 869 (5th Cir. 2012) (quoting *Farmer*, 511 U.S. at 834). For a claim based on a failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, "the 'prison official must have a sufficiently culpable state of mind,' meaning that the official was 'deliberate[ly] indiffern[t] to inmate health or safety.'" *Blackmon*, 484 F. App'x at 869 (quoting *Farmer*, 511 U.S. at 834). To be deliberately indifferent, the prison official must know of and disregard an excessive risk to inmate health or safety. *Farmer*,

---

medical requests were ignored where he alleged he suffered numerous medical conditions that made him susceptible to various ailments during exposure to excessive heat of over 100 degrees which caused him to suffer dehydration, chest pain, shortness of breath, heat cramps, hallucinations and hearing voices.

511 U.S. at 837. A plaintiff can establish a prison official's deliberate indifference by showing that they "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Stevenson v. Tocé*, 113 F.4th 494, 502 (5th cir. 2024) (internal quotation marks and citations omitted).

Contrary to the Supervisory Defendants' contention, Broadnax does allege that the Supervisory Defendants violated his rights, and the rights of others; he provides concrete examples and does not rely solely on reference to violations of "incarcerated individuals" generally. Broadnax specifically alleges the contract provisions and *de facto* policy were the moving force behind the deprivation of his constitutional rights to be free from deliberate indifference wherein he suffered severe pain and serious and permanent injuries. Broadnax specifically alleges the contract is unconstitutional because it "violates federal law," and/or "directs an employee to do so" based on his interpretation of certain provisions in the contract. Broadnax specifically outlines each Supervisory Defendants' responsibilities and roles in ensuring that inmates receive adequate medical care while incarcerated, their knowledge and adoption of the alleged unconstitutional contract provisions and *de facto* policy, and resulting alleged constitutional violations. These allegations are not conclusory. And, while the Supervisory Defendants argue that Broadnax misinterprets the contract provisions, they also admit that resolution of this issue is only proper on summary judgment.[12]

---

[12] The court agrees with Broadnax, the Supervisory Defendants appear, at times, to conflate the two arguments with respect to the contract provisions and *de facto* policy. Murray does not even challenge the *de facto* policy.

Broadnax has adequately alleged that the Supervisory Defendants acted, or failed to act, with deliberate indifference to constitutional violations as necessary for supervisory liability to attach under § 1983. *See Porter v. Epps*, 659 F.3 440, 446 (5th Cir. 2011). These allegations are more than sufficient to allege supervisor liability. At the pleading stage, this court is obligated to take all well-pleaded allegations as true and construe them in Broadnax's favor. *Fernandez-Montes*, 987 F.2d at 284. As Broadnax has alleged a violation of a clearly established constitutional right to be free from deliberate indifference to his serious medical needs as to the Supervisory Defendants in his Amended Complaint, he passes the first step of the two-step inquiry for purposes of the qualified immunity analysis as to his claim of deliberate indifference. In making this second determination, the court notes that the Supervisory Defendants do not move as to this second element; it is not addressed at all in their motion to dismiss. Regardless, taking Broadnax's allegations as true, he has sufficiently alleged the Supervisory Defendants unreasonably violated his constitutional rights. Fifth Circuit precedent makes it clear that a supervisory defendant acts unreasonably when he directly or through his policy subjects an inmate to unconstitutional conditions. *Porter*, 659 F.3d at 446 ("A supervisory official may be held liable . . . if . . . he implements unconstitutional policies that causally result in the constitutional injury"). As a result, the Supervisory Defendants are not entitled to qualified immunity and their Motion to Dismiss should be denied.

C.    Remaining Defendants

Broadnax sues Waller, Fults, Perkins, Schaeffer, Bey and Horn related to their involvement as correctional officers with TDCJ at the Polunsky Unit. Waller, Fults and Perkins were correctional officers, Schaeffer and Bey were sergeants, and Horn was a Lieutenant. Broadnax also sues

Fernandez and Reilley related to their involvement as a nurse and physician assistant, respectively, employed by UTMB at the Polunsky Unit during the relevant time frame.

On September 13, 2023, Broadnax alleges he began to suffer intense and sudden chest pain above his sternum that instantly spread to the right side of his chest.  Amended Complaint (doc. #35 at 5).  He contends he was visibly short of breath, wheezing, gasping and was unable to stand.  *Id*.  He was forced to remain doubled over in his cell and noticed his hands were quickly losing color and that he was becoming extremely pale.  *Id*.  Broadnax states,

> [Broadnax] tried to walk to his cell door to call out for help, and realized he could not take more than one step at a time without stopping to catch his breath. [Broadnax] stood by the door of his cell waiting for [Waller] to pass by.  When she appeared, [Broadnax] alerted her to his condition and asked her to send a nurse.  The TDCJ Officer Orientation Handbook states that '[i]n the event of an emergency, offenders may request a correctional officer or supervisor to contact the medical department on their behalf.'

> As [Broadnax] explained his symptoms to [Waller], he realized he could not say more than a couple of words at a time without stopping to try to catch his breath.  He told [Waller] he thought **he might be having a heart attack**. [Waller] said she would send a nurse and gave Plaintiff three 'sick call' forms, which is TDCJ's process by which an incarcerated individual requests to be seen by a health care professional for medical treatment.

> [Brodnax] filled out one sick call describing his inability to breathe and acute pains in his right side and gave the form to [Waller]. [Waller] said she would relay the sick call to a nurse, pursuant to the Polunsky Unit's policy.

*Id*. at 5-6 (emphasis in original).

After notifying Waller of his condition and waiting on her to deliver his sick call request, Broadnax states his condition got worse and he could only take short breaths.  *Id*. at 6.  He was experiencing sharp pain in his chest and it took him five minutes to walk from his bunk to the door.  *Id*.  Broadnax had to lean on the door for assistance, while holding his side, and became "very pale."  *Id*.  That evening, he alerted Fernandez of his condition and contends she responded that she would

return to check on him but never did. *Id*. Broadnax states his condition began to "drastically deteriorate," and that he felt "severe cramping" in his right side every time he gasped for breath "as if [he] was being stabbed in between [his] ribs." *Id*. As a result, he alleges he could no longer stand in an upright position as it "severely strained his lung." *Id*.

On September 15, 2023, Broadnax states he alerted Fernandez to his symptoms again and told her of his pain and difficulty breathing. *Id*. Broadnax alleges he "realized he could only say a few words at a time, and was speaking through labored breath. [Broadnax] then submitted a second sick call through the prison's mailing system" in the hopes that it would reach Reilley, the physician assistant. *Id*. Plaintiff goes on to allege,

> [Broadnax] began to suffer from a **throbbing, painful headache**. At that point, he was unable to stand, lie down on his right side, sit upright, or walk. [Broadnax] continued **gasping for breath, unable to move**.
>
> The Correctional Managed Health Care Policy Manual provides that '[s]ick call requests will be screened within 24 hours of receipt in the health services department [and t]he individual responsible for screening the sick call requests will assess each request for emergency needs. Upon information and belief [Reilley] is responsible for attending to the sick calls received by inmates in [Broadnax]'s area at the Polunsky Unit. The Policy Manual mandates that '[i]nmates with complaints of recent seizure, altered mental status, suicidal ideation, chest pain, **shortness of breath, difficulty breathing**, abdominal pain, **or other possible emergent or urgent conditions**, [are to] be afforded **immediate access** to health services for assessment.
>
> On September 16, 2023, [Broadnax] again spoke to [Fernandez] and reiterated his urgent need for help. He explained that **his pain had increased overnight and that he was hardly breathing**. [Fernandez] responded that she understood and promised to pass along the information.
>
> The Polunsky Unit's Nursing Protocol specifically commands that a nurse initiate urgent care in instances where an inmate experiences 'crushing or extremely severe pain,' 'chest pain lasting more than a few minutes,' or 'shortness of breath.'
>
> Despite [Fernandez]'s promises and her awareness of [Broadnax]'s condition, she repeatedly disregarded [Broadnax]'s requests, which led [Broadnax] to submit two

> additional 'sick call' requests for urgent medical care through the prison's mail system.  Each time he submitted these requests, nursing staff told [Broadnax] that they had not heard of his previous requests.  Both additional requests were also ignored.

Amended Complaint (doc. #35 at 7-8) (emphasis in original).  Broadnax specifically contends that Waller and Fernandez's decision to not communicate his needs caused his pain to become "increasingly worse," where he could barely speak and felt a stabbing pain every time he coughed. *Id*. at 8.  Broadnax states he thought he was going to die in his cell as a result.  *Id*.

On September 19, 2023, Officer Montoya spoke to Broadnax and "immediately notified" Schaeffer and Horn about his condition.  *Id*.  Broadnax states, "Officer Montoya made clear to [Schaeffer] and [Horn] that [Broadnax] needed to be pulled out of his cell and given medical attention immediately because he was having trouble breathing." *Id*.  Despite these efforts, Broadnax contends Schaeffer and Horn still refused to seek out medical attention for him even though they were aware of his debilitating condition.  *Id*. This refusal caused Broadnax's "highly fragile condition to deteriorate."  *Id*.  He alleges he could barely move in his cell and the "severe chest pains" forced him to sleep sitting up and leaning over on his left side.  *Id*.  When he tried to move, he was doubled over and "forced to walk hunched over, holding his side."  *Id*.

The following day, Officer Montoya checked on Broadnax again.  *Id*.  Broadnax alleges that she asked Schaeffer and Horn if other officials or medical personnel had checked on him to which they responded they had not, specifically stating that they "did not think it was significant enough." *Id*. at 8-9.  Broadnax avers that Officer Montoya expressed "dismay," and recognizing the severity of his condition, took it upon herself to rush him to the medical wing.  *Id*. at 9.  This was seven days after his initial complaints.

At the medical wing, Broadnax states his vitals were taken by Nurse Charvat who then referred him to Dr. Ernestine Julye and Reilley "so that he could then undergo two X-Rays and have his blood pressure checked." *Id.* According to Broadnax, before Reilley even examined him, Reilley told  Broadnax he could give him antibiotics and send him back to his cell.  *Id.*  Broadnax alleges, "[Reilley]'s wholly uninformed and conscious disregard of [Broadnax]'s serious medical needs—evidenced by his inadequate response before he had even examined [Broadnax]—deprived [Broadnax] of proper medical care."  *Id.*  During his visit with Reilley, Broadnax states that he informed Reilley that he submitted numerous sick call requests and Reilley responded he never received any and that this was the first time he had heard of his "serious condition."  *Id*.

> Upon information and belief, [Reilley] is responsible for reviewing and screening sick call requests, and/or responsible for supervising the review and screening of such requests.  Upon information and belief, [Reilley] has an obligation to ensure that sick call requests are not lost, ignored, or destroyed.  His assertion that he was not responsible for the fact that [Broadnax]'s serious and life-threatening medical condition had been ignored for a week, despite [Broadnax]'s repeated requests for help, further demonstrates his deliberate indifference toward [Broadnax]'s serious medical needs.

Amended Complaint (doc. #35 at 9-10).

Upon reviewing the x-rays, it was determined that Broadnax's lung had collapsed noting that he was "unable to take deep breath[s] at this time" and exhibited a "deep barking cough" that remained "persistent [. . .] for 6 days."  *Id*. at 10.  Broadnax alleges he was then shackled and taken back to his cell.  *Id.*  Although less then clear, according to the Amended Complaint, it appears Bey, Fults and Perkins were informed of his condition 10-15 minutes after the exam and that Bey and Perkins were instructed to transport Broadnax to the hospital.  *Id*.

> [Fernandez, Waller, Schaeffer and Horn] lack any medical or other justification for disregarding [Broadnax]'s serious medical needs and denying [Broadnax] urgent medical treatment despite his obvious pain and inability to breathe.  Through their

actions, [Fernandez, Waller, Schaeffer and Horn] created a grave threat to [Broadnax]'s health and life.

Amended Complaint (doc. #35 at 10).

Broadnax next describes the efforts to transport him to St. Luke's Health-Memorial Hospital as chaotic. *Id*. at 11. He alleges Bey allowed him to walk and that medical personnel "explicitly" told Bey at that point that he needed to be in a wheelchair since his lung had collapsed and he needed immediate transportation. *Id*. According to Broadnax, Fults and Perkins were present when Major Nita Neyland completed the paperwork outlining his condition and, as a result, were aware of his condition. *Id*. He contends that Reilley disregarded his serious medical needs by ordering that he be transported to the hospital "via van instead of seeking an emergency medical vehicle." *Id*. at 12. Broadnax states, "[p]ursuant to the Correctional Managed Health Care Policy Manual, '[i]f the inmate's medical condition is life-threatening, emergency medical services are to be activated immediately (911 called) for the inmate to be transferred to the nearest emergency room for stabilization and treatment.'" *Id*. Broadnax avers,

> Knowing that [Broadnax] could barely breathe, [Bey, Fults, and Perkins] shackled Broadnax in a stress position—**contorting his body around his compressed lung**—and forced him into a transport vehicle. Because the transport vehicle did not have a seatbelt or seats, [Broadnax] was **thrown across the car** while shackled. [Fults] drove the van to the hospital while [Bey] escorted and [Perkins] kept watch of [Broadnax]. For the entire ride, [Broadnax] was **doubled over** as **he was unable to breathe and experiencing significant stabbing pains in his chest**.

Amended Complaint (doc. #35 at 12) (emphasis in original).

Upon arrival at the hospital, Broadnax alleges Perkins asked Fults whether a wheelchair was needed "after observing him in his now rapidly declining condition," and despite medical personnel orders to the contrary, Fults responded, "No, don't worry about it. He can walk." *Id*. at 12-13. Broadnax states,

[Bey, Fults, and Perkins] forced [Broadnax] to walk through the Emergency Room entrance into the hospital in **complete disregard** of those orders by the prison medical staff, **knowing** that Plaintiff's serious and debilitating condition required him to be in a wheelchair.

Upon entering the hospital, medical professionals at the front desk **immediately reprimanded** [Bey, Fults, and Perkins] for refusing to transport [Broadnax] in a safe manner, exacerbating his condition, and further endangering [Broadnax]. Specifically, one nurse admonished the three Defendants because [Broadnax] was 'not supposed to be walking' because of his condition, and made it clear to [Bey, Fults, and Perkins] that they were **putting [Broadnax]'s life in danger**.

[Bey, Fults, and Perkins] lacked any medical or other justification for exacerbating [Broadnax]'s medical condition despite his obvious pain and inability to breathe and in complete disregard of the medical personnel's orders.

As a result of not receiving urgent medical care, **[Broadnax]'s lung collapsed** and he experienced an **inability to breathe, severe chest pain, sudden and intense shortness of breath, falling oxygen levels in his blood, dangerous pressure on his heart, and sharp pain on his affected side**. Through their actions, Defendants created a grave threat to [Broadnax]'s health and life. Defendants further exacerbated [Broadnax]'s condition by disregarding his serious medical needs and refusing to transport him in a safe manner all while knowing that [Broadnax]'s condition required additional precautions.

After arriving at St. Luke's Health-Memorial Hospital in Livingston, Texas, [Broadnax] immediately underwent emergency surgery to repair his lung.

Amended Complaint (doc. #35 at 13) (emphasis in original). Broadnax was ultimately transferred to HCA Houston Healthcare Hospital for recovery and remained there from September 21, 2023, through September 28, 2023. *Id*. at 14. Broadnax was on a ventilator for the first five days of treatment and remained on strict bed rest orders for the entirety of his stay. *Id*.

Broadnax concludes his Amended Complaint with additional allegations against Reilley concerning Broadnax's post-surgical care and recovery after returning to the Polunsky Unit on October 4, 2023. *Id*. at 16. Broadnax alleges Reilley refused to examine him or assess his condition upon his return, except to say that he planned on removing [Broadnax]'s stitches two days later,

21

which according to Broadnax, was too early as the wound had yet to heal and was still causing him severe pain. *Id.* Broadnax avers, "[o]nce again, and consistent with his pattern of conduct throughout [Broadnax]'s life-threatening illness, [Reilley] refused to respond to [Broadnax]'s serious medical needs and dismissed his concerns as insignificant and refused to check his wound." *Id.* at 16-17. Broadnax goes on to complain that Reilley then instructed a Nurse Elliott to prematurely remove his stitches on October 7, 2023, which left Broadnax with an open wound on his chest that was painful and created a risk of infection. *Id.* at 17. Broadnax describes an October 9, 2023, visit with Dr. Julye who expressed surprise that the wound was open and asked Broadnax what happened. *Id.* "Dr. Julye saw that [Broadnax]'s wound was irritated and raw, and immediately prescribed a two-week treatment plan after finding that the wound had not healed properly." *Id.* Broadnax requested access to "a clean, medical shower" to help treat the wound, to which Dr. Julye promised to relay the message. *Id.*

On October 11, 2023, Broadnax met with Nurses Charvat and Hoogendorn so that they could clean the wound. *Id.* According to Broadnax, they noted that the wound was open and expressed deep concern as it placed Broadnax at "risk for a major infection." *Id.* Broadnax reiterated his request for a medical shower and both indicated that they would have to ask Reilley first. *Id.* That same day, Nurse Hoogendorn informed Broadnax that Reilley denied the request, stating that Broadnax's situation "did not qualify." *Id.* "Nurse Hoogendorn apologetically explained that she did not agree with this assessment but that her hands were tied because of [Reilley]'s orders." *Id.* at 18. Broadnax sent a written request to Dr. Julye on October 12, 2023, expressing his concern that the showers were dirty and that his neighbor had a staph infection, but he never received a response. *Id.* Broadnax concludes:

Despite knowing the severe risk of infection [Broadnax] already faced while suffering from an open wound, [Reilley] blatantly disregarded [Broadnax]'s serious medical needs and forced him to share a shower with an inmate who they knew had a well-documented and advanced case of MRSA. [Reilley] was aware that MRSA infections are **highly contagious** and **can be fatal** but knowingly exposed [Broadnax] to a substantial risk of serious harm by ignoring the fact that [Broadnax] had an open wound and disregarding [Broadnax]'s request for a medical shower. This deliberate action of denying and further ignoring [Broadnax]'s request despite his knowledge of the risk to [Broadnax]'s open wound put [Broadnax] at additional risk of serious infection. [Reilley]'s conscious disregard for the risk of serious infection to [Broadnax] further demonstrates his subjective intent to deprive [Broadnax] of adequate medical care.

As a result of [Reilley]'s deliberate decision to remove [Broadnax]'s stitches too early without examining [Broadnax] first, [Broadnax] suffered additional pain, endured an unnecessarily extended healing process, and faced a severe risk of infection to the wound created by [Reilley]. [Broadnax]'s fragile health and life was put at an even greater risk than if his injuries had been treated properly.

*Id*. at 18-19 (emphasis in original).

In sum, Broadnax argues Defendants "knew of [Broadnax]'s serious medical needs but delayed, denied [Broadnax] medical treatment, and chose to transport him in a non-emergency vehicle which exacerbated his condition." *Id*. at 30. Broadnax claims further that Defendants "shocked the conscious and violated professional norms, established medical standards, and several Texas state laws" and were "deliberately indifferent to the known, predictable risk that [Broadnax] would suffer pain, serious bodily harm, and potentially even death." *Id*. at 31.

### i.    TDCJ Officials

In their motions to dismiss, Bey, Fultz, Horn, Schaeffer, Waller and Perkins argue that Broadnax's claims are conclusory and do not sufficiently satisfy the pleading requirements (doc. #46 at 3). They also assert their entitlement to qualified immunity.

"Since *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment."

*Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003).  Broadnax "had a clearly established right not to have [his] serious medical needs met with deliberate indifference." *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 307 (5th Cir. 2020); *see also Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).  Throughout the weeks of September and October 2023 that Defendants allegedly denied Broadnax the medical treatment he needed, the law was "clearly established that a prison inmate could demonstrate a constitutional violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter*, 467 F.3d at 465.  Thus, the clearly established prong of qualified immunity is met.  The undersigned proceeds then in analyzing whether Broadnax's pleadings sufficiently allege a constitutional violation.

a.    <u>Waller</u>

To establish deliberate indifference, Broadnax must show that (1) Waller was aware of facts from which the inference could be drawn that a substantial risk of harm exists, and (2) Waller actually drew that inference.  *Sims v. City of Jasper*, 543 F. Supp. 428, 440 (E.D. Tex. 2021) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).[13]  In urging her motion to dismiss, Waller asks the court to assume that because Fernandez showed up by Broadnax's cell later in the evening on September 13, 2023, that Waller must have relayed Broadnax's complaints to Fernandez.  That is not what is alleged, however.  Broadnax asserts that he told Waller he thought he was having a heart attack, that he was visibly short of breath, wheezing, gasping and was unable to stand, and

---

[13] The court notes that while Waller moves to dismiss Broadnax's claims against her for failure to state a claim, she cites to evidentiary failures only relevant in the context of a motion for summary judgment and then asks the court to consider facts not alleged and then to consider those facts in her favor.  This is clearly not the appropriate standard.  These arguments are put forth for the majority of the defendants in their motions to dismiss.

in response, Waller gave him medical grievances to fill out.  While Broadnax admits that Waller said she would report his concerns to medical, he also pleads that she never did despite TDCJ policy that states in the case of emergencies, an inmate can request TDCJ staff to request medical assistance on the inmate's behalf.  In essence, Broadnax pleads that Waller, at a minimum, ignored his complaints as those complaints never reached medical officials.[14]  As a result, Broadnax has pleaded sufficient facts to show that Waller was deliberately indifferent to his serious medical needs.  Broadnax's well-pleaded facts and the favorable inferences that arise from them indicate that it is at least plausible that Waller was aware of facts from which she could infer that a substantial risk of harm existed with respect to Broadnax and a potential heart attack, and that Waller actually drew that inference.  Broadnax also contends that Waller's decision to not communicate his needs caused his pain to become "increasingly worse," where he ultimately suffered from a collapsed lung which required emergency surgery and ventilation for several days.  A delay in medical care can constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Broadnax's factual allegations, taken as true, sufficiently allege a constitutional violation of deliberate indifference to his serious medical needs.  As a result, Waller is not entitled to qualified immunity and her motion to dismiss for failure to state a claim should be denied.

---

[14] It is unclear what TDCJ policy requires from correctional officers in such a situation.  Handing an inmate grievances to fill out when suffering from an alleged medical emergency appears insufficient.

b.      <u>Schaeffer & Horn</u>[15]

Broadnax alleges that both Schaeffer and Horn were notified by Officer Montoya on September 19, 2023, that he needed to be pulled out of his cell and given medical attention "immediately" because he was having trouble breathing.[16]  Despite these efforts, Broadnax contends Schaeffer and Horn refused to do so and his condition worsened.  When asked the next day by Officer Montoya why no one had checked on Broadnax, Broadnax alleges Schaeffer and Horn responded they "did not think it was significant enough."  Dismayed at the response, Broadnax alleges that Officer Montoya then rushed him to the medical wing.  In their motion to dismiss, Schaeffer and Horn ask the court to consider facts outside the pleadings, namely that because Broadnax had been seen by Fernandez "they could not know of a substantial risk of serious bodily harm if Broadnax was in ongoing communication with medical personnel days prior."  According to Schaeffer and Horn, "any officer would expect that the unit nurse would be handling treatment needs appropriately."  That may be true but that is simply not what is alleged in Broadnax's Amended Complaint.  And while Schaeffer and Horn argue that Broadnax fails to allege that Schaeffer and Horn observed his condition personally and thus could not have perceived a significant risk of harm, they point to no case that law outlining such a requirement.  Furthermore, it could be inferred from their refusal to seek out Broadnax given they were informed he was suffering from a medical emergency that they were at least indifferent, if not callous, to his serious medical needs. While the court agrees that this is a close call, the court is obligated to accept all well-pleaded facts

---

[15] The court disagrees with Broadnax's assertion that Schaeffer and Horn failed to assert their entitlement to qualified immunity.

[16] It is unclear to the court why Officer Montoya did not seek medical attention for Broadnax herself.

as true and make inferences in Broadnax's favor at this stage. Based on these allegations and the delay in medical treatment, it is at least plausible that Schaeffer and Horn were aware of facts from which they could infer that a substantial risk of harm existed and that they drew the inference and then chose not to act. Broadnax sufficiently alleges a constitutional violation and Schaeffer and Horn are not entitled to qualified immunity. Their motion to dismiss should be denied.

c.    <u>Bey, Fults & Perkins</u>

With respect to Bey, Fults and Perkins, Broadnax alleges (1) Bey was deliberately indifferent when he allowed Broadnax to walk despite medical personnel "explicitly" telling him that Broadnax needed to be in a wheelchair because his lung collapsed and he needed to be taken to a hospital immediately, (2) Bey, Fults and Perkins were deliberately indifferent when they transported Broadnax to the hospital in a TDCJ van shackled and without a seatbelt despite suffering from a collapsed lung, and (3) Bey, Fults and Perkins were deliberately indifferent when they "forced" Broadnax to walk into the emergency room.

With respect to the allegation that Bey was deliberately indifferent when he allowed Broadnax to walk despite knowing that he required urgent medical attention and emergency transport to the hospital, the court notes the factual allegations regarding this claim are sparse. Broadnax's Amended Complaint dedicates one paragraph to this allegation stating,

> When officers and medical personnel saw Plaintiff walking, they called out to Defendant Officer Bey, ***explicitly telling him*** that Plaintiff should be in a wheelchair given his condition. Officers and medical personnel alike began asking Plaintiff if he was able to breathe and nurses told him that they were getting him a wheelchair.

Amended Complaint (doc. #35 at 10) (emphasis in original). This appears to be the first time Bey was informed by medical staff that Broadnax required a wheelchair. This allegation too is a close call but giving all favorable inferences to Broadnax, the undersigned finds that Broadnax has stated

27

a claim for deliberate indifference.  Broadnax alleges that Bey was fully informed of Broadnax's urgent condition and need for "emergency" transport to the hospital.  Broadnax specifically alleges that about 10-15 minutes after his exam and before this that, Bey, along with Fults and Perkins, were informed of Broadnax's condition.  Based on these same allegations, it would appear that Broadnax's physical symptoms were apparent and dire.  These allegations are sufficient to allege that Bey was aware of facts that by allowing Broadnax to walk despite his medical condition would put Broadnax at a substantial risk of harm and that Bey inferred the risk.  Bey's motion to dismiss as to this claim should be denied.  He is not entitled to qualified immunity as to this claim.

Broadnax next asserts that Bey, Fults and Perkins were deliberately indifferent to his serious medical needs when they transported him by TDCJ van shackled in a stress position, contorting his body around his compressed lung, and without a seat belt, despite knowing that he was suffering from a collapsed lung and could not breathe.  Broadnax specifically alleges that he was thrown across the vehicle while shackled.  Broadnax contends that Fults drove the van while Bey escorted Broadnax and Perkins kept watch and that he was "double over" as he could not breathe, experiencing significant pain in his chest.  Bey, Fults and Perkins argue that the factual allegations do not support a claim of deliberate indifference as the decision to transport Broadnax by a TDCJ van, rather than an emergency medical vehicle, came from UTMB officials.  Bey, Fults and Perkins refer the court to the contract between TDCJ and UTMB attached to Broadnax's Amended Complaint which states:

I.    **Medical Transportation**: The UTMB shall provide or arrange the EMS transportation of TDCJ Inmate patients to the UTMB/TDCJ Hospital in Galveston and/or free-world hospitals and Discharging Special Needs Inmates when EMS transportation is necessary, based on an assessment and clinical evaluation by a qualified health care professional. The TDCJ will be

responsible for transportation by chain bus or other non-EMS transportation services.

1.    For transfer of inpatients between a TDCJ infirmary or regional medical facility and the UTMB/TDCJ Hospital at Galveston or a free-world hospital, EMS transportation shall be routinely provided.

2.    TDCJ transportation may be utilized for inpatient transfers provided that:

    a.    TDCJ Inmates transferring from one inpatient facility to another inpatient facility shall be assessed by the sending physician and/or mid-level practitioner;

    b.    documentation charted or noted that the TDCJ Inmate is not anticipated to require medical intervention or assessment while enroute; and

    c.    the transport time by TDCJ van is less than three (3) hours.

3.    If the criteria for TDCJ transport in paragraphs 2 (a) and (b) is met, but the transport time is greater than three (3) hours, the request for TDCJ transport shall be referred to the TDCJ Health Services Division Liaison for review and decision.

Exhibit N at 12. Pursuant to the contract that requires the sending physician and/or mid-level practitioner to assess transportation by TDCJ, the medical records also attached to the Amended Complaint establishes that Reilley authorized transportation for Broadnax by unit van. Exhibit C at 5. The decision to transport Broandax by TDCJ van was not made by Bey, Fults or Perkins. The same medical records also establish that there was no indication from medical that the use of shackles would be contraindicated. While Bey, Fults and Perkins argue that Broadnax fails to plead that they were aware of his collapsed lung, again, a review of the pleadings does not bear this out. Broadnax specifically pleads that Bey, Fults and Perkins were aware he was suffering from a collapsed lung and required transport to the hospital. Broadnax pleads that Bey was admonished by medical staff for not transporting him by wheelchair before he was transported in the TDCJ van.

Broadnax pleads that Reilley's own alleged deliberate indifference in not requiring EMS transportation does not absolve Bey, Fults and Perkins of their alleged deliberate indifference in forcing him to ride shackled and unbelted while suffering from a collapsed lung which allegedly exacerbated his condition.[17]  Accepting the well-pleaded facts as true and making all inferences in Broadnax's favor, the court finds that Broandax has sufficiently pled a constitutional violation with respect to this claim.  Bey, Fults and Perkins are not entitled to qualified immunity and their motion to dismiss with respect to this claim should be denied.

Broadnax next asserts that Bey, Fults and Perkins were deliberately indifferent to his serious medical needs when they let him walk once he arrived at the hospital.  Broadnax's allegations with respect to this claim are as follows:

> Once they arrived at the hospital, [Perkins] specifically asked [Fults] whether a wheelchair was needed for [Broadnax] after observing him in his now rapidly declining condition.  Despite prison medical personnel's explicit orders to keep [Broadnax] in a wheelchair, [Fults] responded, **'No, don't worry about it.  He can walk."** [Bey, Fults, and Perkins] forced [Broadnax] to walk through the Emergency Room entrance into the hospital in **complete disregard** of those orders by the prison medical staff, **knowing** that [Broadnax]'s serious and debilitating condition required him to be in a wheelchair.

> Upon entering the hospital, medical professionals at the front desk **immediately reprimanded** [Bey, Fults and Perkins] for refusing to transport [Broadnax] in a safe manner, exacerbating his condition, and further endangering [Broadnax].  Specifically, one nurse admonished the three Defendants because [Broadnax] was 'not supposed to be walking' because of his condition, and made it clear to [Bey, Fults and Perkins] that they were **putting [Broadnax]'s life in danger**.

Amended Complaint (doc. #35 at 12-13).

---

[17] Resolution of what type of discretion, if any, Bey, Fults and Perkins had in choosing to transport Broadnax shackled and unbelted in this situation appears appropriate only in a motion for summary judgment.

Absent from the pleadings is any discussion of Bey's involvement in this distinct incident other than the implication that he was present during the escort inside the hospital. A defendant's personal involvement in the violation is an essential element in a § 1983 claim. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Broadnax's claim against Bey with respect to him having to walk in to the hospital fails to allege a constitutional violation as there are no factual allegations of his personal involvement. Bey is entitled to qualified immunity with respect to his claim and his motion to dismiss should be granted.

As to Perkins, the factual allegations do not support a claim of deliberate indifference. Broadnax pleads specifically that Perkins asked Fults whether he needed a wheelchair upon arrival at the hospital indicting his concern for Broadnax's needs upon entering the hospital on foot. That allegation alone negates any knowing, wanton disregard for this safety. Deliberate indifference requires the actor to have "a subjectively culpable state of mind." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (quoting *Farmer*, 511 U.S. at 846 n.9). It connotes conscious disregard for known or obvious consequences. *See Bd. of Cty. Comm'rs of Bryant Cty. v. Brown*, 520 U.S. 397, 413 (1997). Deliberate indifference is "an extremely high standard to meet," requiring evidence of "egregious intentional conduct." *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 344 (5th Cir. 216) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). Broadnax fails to allege a constitutional violation as to this claim against Perkins and he is entitled to qualified immunity. His motion to dismiss as to this claim should be granted.

As to Fults, Broadnax's factual allegations state that he unilaterally decided Broadnax could walk in the hospital contrary to medical orders while he was allegedly visibly suffering from a deteriorating condition. The court acknowledges this too is a close call but taking the well-pleaded

31

facts as true and giving all favorable inferences to Broadnax as required at this stage, the court finds the factual allegations sufficient to state a claim of deliberate indifference.  At this point, it is clear Fults was fully informed of Broadnax's medical condition and the restrictions on him as conveyed by medical staff.  Requiring Broadnax to walk into the hospital while suffering and in direct contradiction to medical orders is sufficient to allege a wanton disregard for his safety and serious medical condition.  The factual allegations are sufficient to allege that Fults was aware of a substantial risk of harm to Broadnax and inferred the risk.  Broadnax has alleged a constitutional violation as to his claim and Fults' motion to dismiss as to his claim should be denied.  He is not entitled to qualified immunity with respect to this claim.

ii.    UTMB Officials

Fernandez and Reilley argue that Broadnax's claims are speculative, conclusory, and do not amount to an abandonment of their constitutional duty (doc. #48 at 7).

a.    Fernandez

Broadnax alleges that he spoke with Fernandez three different times from September 13, 2023, through September 16, 2023, regarding his medical condition.  He alleges she was made aware of his condition on the evening of September 13, 2023, and that she responded that she would return to check on him but never did.  Amended Complaint (doc. #35 at 6).  Broadnax specifically pleads that his condition drastically deteriorated where he suffered from severe cramping, shortness of breath, and felt a stabbing pain in between his ribs.  *Id*.  He alleges he could not stand upright.  *Id*. He contends he saw Fernandez again on September 15, 2023, where he informed her of his symptoms and told her of his pain and difficult breathing.  *Id*.  There is no indication in the pleadings as to how Fernandez responded to this encounter, however.  *Id*.  Broadnax alleges he filled out

another medical grievance hoping it would reach Reilley.  *Id*.  On September 16, 2023, he alleges he spoke with Fernandez again and reiterated his urgent need for help, explaining that his pain had increased overnight and that he was hardly breathing.  *Id*.  According to Broadnax, Fernandez responded that she "understood" and would pass along the information but that she never did.  *Id*. Broadnax also alleges his condition continued to worsen and that nursing protocol commands that a nurse initiate urgent care in such instances, yet he was denied immediate access.  *Id*. at 7.  It was not until September 20, 2023, that Broadnax finally received medical attention when Officer Montoya took him to medical.  These factual allegations taken as a whole sufficiently plead that Fernandez was aware of facts from which she could infer a substantial risk of harm to Broadnax and inferred the risk.  Again, a delay in medical care can constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.  *Mendoza*, 989 F.2d at 195. Broadnax has alleged a constitutional violation with respect to his claims against Fernandez and she is not entitled to qualified immunity.  Her motion to dismiss should be denied.

b.    Reilley

Broadnax asserts four distinct claims of deliberate indifference against Reilly.  He alleges Reilley was deliberately indifferent (1) during his initial visit with him in medical, (2) in failing to respond to his medical grievances, (3) in ordering him be transported to the hospital in a TDCJ van and not by EMS transport, and (4) during his post-operative care.

With respect to the initial visit on September 20, 2023, Broadnax contends that before Reilley even examined him, Reilley told  Broadnax he could give him antibiotics and send him back to his cell.  Amended Complaint (doc. #35 at 9).  Broadnax alleges, "[Reilley]'s wholly uninformed and conscious disregard of [Broadnax]'s serious medical needs—evidenced by his inadequate response

before he had even examined [Broadnax]—deprived [Broadnax] of proper medical care. *Id.*  What is less than clear, however, is how Broadnax was deprived of proper medical care at this very moment as Broadnax further alleges he was sent for an x-ray and was ultimately diagnosed with a collapsed lung.  Broadnax concedes he got treatment.  These allegations lack the requisite wanton disregard for a serious medical need and Broadnax's own label of "inadequate" medical care evinces a claim more akin to negligence, or medical malpractice, at best.  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d 339, 346 (5th Cir. 2006).  Broadnax has not alleged a constitutional violation with respect to his initial encounter with Reilley.  He is entitled to qualified immunity and his motion to dismiss with respect to this claim should be granted.

Concerning Broadnax's multiple medical grievances, he alleges Reilley responded that he never received them.  Broadnax contends that per policy it is Reilley's responsibility to ensure that medical grievances are not lost, stolen, or ignored.  The crux of Broadnax's complaint is that his medical concerns and grievances were ignored.  As a result, Broadnax claims that his medical treatment was delayed which caused his condition to worsen.  In response, Reilley argues that Broadnax has failed to prove that Reilley is responsible for reviewing and/or supervising sick call requests.  As previously addressed, that is not the standard under a motion for dismiss for failure to state a claim.  It is sufficient that Broadnax alleges Reilley is responsible for the processing of medical grievances and that they were ignored and that his medical treatment was delayed for almost a week which allegedly caused his condition to worsen.  Whether the grievances were actually ignored or Broadnax never actually received them is a question of fact that must be resolved, if

34

possible, on summary judgment.  Giving these allegations and the inferences in Broadnax's favor as required, they are sufficient to state a claim of deliberate indifference against Reilley based on his alleged failure or refusal to respond to Broadnax's repeated requests for medical assistance.  *See Ramirez v. Varughese*, Civil Action No. H-21-3922, 2022 WL 2223043, at *4 (S.D. Tex. June 21, 2022).

Broadnax next contends that Reilley was deliberately indifferent when he failed to transport Broadnax to the hospital by EMS.  Broadnax states, "[p]ursuant to the Correctional Managed Health Care Policy Manual, '[i]f the inmate's medical condition is life-threatening, emergency medical services are to be activated immediately (911 called) for the inmate to be transferred to the nearest emergency room for stabilization and treatment.'"  Broadnax pleads that his condition was life-threatening, that for the entire ride he was doubled over in pain and unable to breathe.  Broadnax contends further that due to this failure he was shackled and unbelted during transport which exacerbated his condition.  While Reilley argues the medical records attached to Broadnax's pleadings show that Reilley assessed him to be in stable condition, the court is required to accept all well-pleaded allegations as true and make inferences in Broadnax's favor.  Broadnax specifically contends that Reilley ignored his complaints for a week while he was suffering a medical emergency but then transported him by TDCJ, which transported him while shackled and unbelted.  According to Broadnax, upon his arrival at the hospital, he underwent emergency surgery and was then on a mechanical ventilator for almost a week.  Broadnax states that despite knowing "that Plaintiff's lung had collapsed and that he was unable to breathe[,]" Defendant Reilley caused him unnecessary pain: he ordered inappropriate transportation to the hospital, against "normal procedure for emergency and life-threatening situations," and which he knew "did not have a seatbelt or seats," causing Plaintiff

35

to be "thrown across the car" as he "experience[ed] significant stabbing pains in his chest." Amended Complaint (doc. #35 at 11-12); *see Ramirez*, 2022 WL 2223043, at *5 ("Allegations that a prison physician has caused the 'unnecessary and wanton infliction of pain' can state a claim for deliberate indifference." (quoting *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999))). Broadnax's claim with respect to transportation sufficiently alleges deliberate indifference. As a result, Reilley is not entitled to qualified immunity with respect to this claim and his motion to dismiss should be denied.

Broadnax finally contends that Reilley was deliberately indifferent to his serious medical needs when he ordered that Broadnax's stitches be prematurely removed which left Broadnax with an open wound susceptible to infection. Broadnax alleges this course of action only affirms Reilley's hostile and indifferent attitude toward his medical care coupled with his other allegations. Reilley argues that it is speculative that this decision could have resulted in infection. Again, this court is bound by Broadnax's well-pleaded allegations at this stage. Broadnax states that he expressed his concerns to Reilley that it was too early and that his wound had not healed, still causing him severe pain. In response, Broadnax alleges that Reilley dismissed his concerns as insignificant and refused to check his wound. Broadnax states that Reilley insisted on having the stitches removed which left an open wound that was painful and created a risk of infection. Broadnax alleges further as evidence of Reilley's deliberate indifference, he consciously disregarded the risk of infection and refused to give Broadnax a medical shower pass forcing him to shower with an inmate who was known to have a staph infection. These allegations are more than sufficient to state a claim of deliberate indifference to Broadnax's medical care. Broadnax has alleged a

constitutional violation and Reilley is not entitled to qualified immunity with respect to this final claim.  Reilley's motion to dismiss as to this claim should be denied.


## Recommendation

The motions to dismiss (doc. #s 46, 48, 56 & 87)  should be denied in part and granted in part.  As outlined above, at least one claim against each defendant states a claim of deliberate indifference.  As a result, the defendants are not entitled to qualified immunity as to the claims outlined above.

## Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error.  *Douglass v. United Servs. Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.


SIGNED this 19th day of December, 2025.

_____
Zack Hawthorn
United States Magistrate Judge